**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**UNITED STUDENT AID FUNDS, INC.,**

        **Plaintiff,**

**-vs-**                                       **Case No. 6:07-cv-1140-Orl-19DAB**

**GARY'S GRADING & LANDSCAPING,**

        **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration following evidentiary hearing on the following motion filed herein:

> **MOTION:**   **MOTION FOR ORDER HOLDING DEFENDANT AND ITS PRESIDENT IN CIVIL CONTEMPT AND FOR PUNITIVE DAMAGES (Doc. No. 24)**
>
> **FILED:**     **July 30, 2008**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

**Background**

According to the allegations of the Complaint (Doc. No. 1), the testimony at hearing, and other matters of record, the following facts have been established. Plaintiff, a federal student loan guaranty agency, filed the instant action seeking to compel Defendant to comply with an administrative wage garnishment order regarding an employee who had defaulted on a federally guaranteed student loan. Defendant "Gary's Grading and Landscaping" is a fictitious name for a small, local landscaping

business that, according to testimony at hearing, no longer operates under that name. The principals of that business, Gary Killette and his wife Leslie Killette, incorporated as "Gary's Grading, Inc.," and all parties have treated that corporation as the proper respondent.[1] The employee at issue is Tabitha Killette, the daughter of Gary and Leslie Killette.

Following Tabitha's default on the underlying student loan, Plaintiff obtained an administrative wage withholding order, dated January 19, 2006, directing Defendant to withhold 10% of the debtor's disposable pay for each pay period and remit it to a specified collection agency. The Court notes that the order, attached to the Complaint as Exhibit B, is not signed by any judge and appears, on its face, to be no more than a demand letter.[2] According to the testimony, the January administrative order was sent to Defendant via facsimile and was received by a secretarial employee, who apparently just "stuck it in a file." Mrs. Killette testified that she, as office manager, did not know about the order at that time. It is undisputed that Defendant took no action to immediately comply with the order.

On February 21, 2006, Plaintiff issued a subsequent wage withholding order, attached as Exhibit C to the Complaint ("the second order"). Entitled "Second Notice of Order of Withholding From Earnings," this order, too, is not signed by any judge, and threatens that if funds are not received, Plaintiff "must review this matter for legal action." No response was made to this order, either. When asked at hearing why there was no response, Mrs. Killette stated that she did not think these orders were "official."

---

[1] For present purposes, the Court refers to the corporation as Defendant.

[2] While the Court does not find that this excuses non-compliance nor that the administrative wage orders were improper or unenforceable, the present motion before the Court is one for contempt of Judge Fawsett's Order, and for an award of punitive damages, based on what Plaintiff calls "flagrant disobedience." (Doc. No. 24 at 1). What Defendant and Mr. Killette knew, and when they knew it, is therefore relevant.

Plaintiff's attorney sent a demand letter in August 2006 and, after receipt, Defendant began, in September 2006, withholding and remitting the appropriate amounts from Tabitha's current paychecks (Testimony at hearing, Affidavit of Plaintiff- Exhibit 1 to Doc. No. 17, and Doc. No. 28). Defendant did not, however, tender wages that should have been withheld and remitted from the date of the first administrative order (January 19, 2006) to September 15, 2006, plus interest and fees and costs.

Plaintiff filed the instant lawsuit on July 9, 2007. Counsel for Defendant appeared, and the parties commenced settlement negotiations, but no answer was timely filed, and the Clerk entered a default (Doc. Nos. 1, 7, 9, 10 and 12). Plaintiff moved for entry of a default judgment (Doc. No. 17), and the District Judge granted certain relief, but declined to enter judgment (Doc. No. 21). Specifically, the District Judge ordered Defendant to produce copies of its payroll records from January 19, 2006, and to pay Plaintiff the appropriate remittance as indicated from the records, until the debt Tabitha owed Plaintiff was paid in full. The Court also noted that Plaintiff was "permitted to recover its costs and reasonable attorney's fees incurred in bringing this action and such other relief as the Court determines to be just, including punitive damages, and [Plaintiff] may move for an award of those amounts at such time as the full extent of Defendant's liability and the amount of [Plaintiff's] expenditures to enforce same become known." (Doc. No. 21).

Plaintiff filed a status report (Doc. No. 22), indicating that it had not received the records nor any remittance since the entry of the Court's Order on April 16, 2008; nor had Defendant communicated with counsel. Plaintiff then filed the instant motion to hold Defendant and its principal, Gary Killette, in contempt of the District Court's April 16, 2008 Order. The undersigned

issued an Order and Notice of Hearing (Doc. No. 25) and directed Plaintiff to serve[3] the motion and the Order and Notice. Defendant, through counsel, filed an Answer (Doc. No. 28) admitting liability for the nine month period when "through a clerical error" it did not withhold pay, but asserted that it had sent the payment records to Plaintiff's counsel in November 2007, and had tried, without success, to determine the appropriate amount due. At hearing, it was established that, in fact, the records sent were from November 2006 forward, and did not include records from January to September 2006, the period in question. It was also established that three "intercepts" from the Internal Revenue Service were credited to Tabitha's loan account, leaving a current balance of approximately $3600.00 on the underlying student loan.

The unpaid amount Defendant owes Plaintiff exclusive of any interest, costs, penalties or fees is approximately $1,272.25.[4] Plaintiff now seeks to recover that amount, plus $251.00 interest (with additional interest accruing), and (in what can appropriately be characterized as a Dickensian turn of events) attorneys fees and costs in excess of $11,000, for a total purge amount of $13,828.43, ***plus***, should the Court be so inclined, Plaintiff seeks an award of punitive damages. For the reasons that follow, the Court declines to grant this request, and **respectfully recommends** that the motion be **denied, subject to the specific relief provided herein.**

### *ISSUES AND ANALYSIS*

Plaintiff moves for a finding of civil contempt. In this circuit:

> In a civil contempt proceeding, the petitioning party bears the burden of establishing by "clear and convincing" proof that the underlying order was violated. *Newman v.*

---

[3] Plaintiff used the services of the United States Marshal for this purpose, at a cost of $450.00 (Doc. No. 32). Such extravagance regarding so small an amount in controversy was neither ordered nor contemplated by the Court. Many methods of actual service are available at a fraction of the cost of the Marshal's Service.

[4] The exact amount can only be established by reference to the payroll records which have yet to be produced. Plaintiff represented, however, that the usual remittance from Defendant was $36.35 a week, multiplied by 35 unpaid weeks, yielding $1,272.25.

> *Graddick,* 740 F.2d 1513, 1525 (11th Cir. 1984); *Piambino v. Bestline Products, Inc.*, 645 F.Supp. 1210, 1213 (S.D. Fla. 1986). However, once the moving party makes a prima facie showing that the court order was violated, the burden of production shifts to the alleged contemnor to show a "present inability to comply that goes 'beyond a mere assertion of inability....' " *Combs*, 785 F.2d at 984 *(quoting United States v. Hayes*, 722 F.2d 723, 725 (11th Cir. 1984); *see United States v. McAnlis,* 721 F.2d 334, 337 (11th Cir. 1983), *cert. denied*, 467 U.S. 1227, 104 S.Ct. 2681, 81 L.Ed.2d 877 (1984). Therefore, the focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue. *Jim Walter Resources, Inc. v. Int'l Union, United Mine Workers of America*, 609 F.2d 165, 168 (5th Cir. 1980). Conduct that evinces substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance. *Newman,* 740 F.2d at 1524.

*Howard Johnson Co., Inc. v. Khimani,* 892 F.2d 1512, 1516 (11th Cir. 1990). A civil contempt order will be upheld if the proof of the defendant's contempt is "clear and convincing." *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000). "This clear and convincing proof must ... demonstrate that 1) the allegedly violated order was valid and lawful; 2) the order was clear, definite and unambiguous; and 3) the alleged violator had the ability to comply with the order." *Doe, 1-13 ex rel. Doe Sr. 1-13 v. Bush*, 261 F.3d 1037, 1047 (11th Cir. 2001) (internal marks and citation omitted). Any ambiguities in the order "are to be construed in favor of the alleged contemnor." *Id.* at 1062.

Applying the foregoing principles of law, the Court concludes that the record does not establish clearly and convincingly that this Defendant should be sanctioned for contempt.

There is no question that the District Court's April Order was valid and lawful. At issue, however, is whether the order was "clear, definite and unambiguous" and whether Defendant complied (or had the ability to comply) with the Order. A careful review of the Order compels a finding that, while the Order was as clear as possible *under the circumstances,* it is not without ambiguity, due to the identity of Defendant and the lack of a *specified and definit*e dollar amount to

be paid. Further, while Defendant did not fully comply with the Order, the Court finds the failure to fully comply, under the circumstances, is not contemptuous.

There are two main parts of the Order at issue here: the obligation to produce records and the obligation to remit past due amounts.

*The production of records*

The second paragraph of the Order directs "Defendant, Gary's Grading & Landscaping" to "produce for inspection at the offices of USA Funds' counsel copies of payroll and all other records reflecting any consideration paid to Tabitha A. Killette since January 19, 2006, within fourteen 14 days of the date of entry of this order." (Doc. No. 21).

As set forth above, Gary's Grading & Landscaping was a fictitious name owned by Gary Killette and used, for a time, for his small business. The records attached to the motion establish that the registration for the name expired in December 2003 (Doc. No. 24-3). The records and the testimony also establish that Gary Killette and others incorporated, and proceeded to do business as Gary's Grading, Inc., a Florida corporation in good standing (Doc. No. 24-3). Thus, to the extent the Order directs "Gary's Grading & Landscaping" to produce records, as a practical matter, the Order is directed to a fictitious name.

While ambiguous on its face, the Court nonetheless finds that this defect alone is not sufficient to excuse non-compliance. The conduct of the parties establishes that all sides knew the intent of the Order (that it be directed to the employer of Tabitha Killette). While the correct Defendant was never formally added to the suit, the parties acted at all times as if the corporation was the proper party (service was had on the registered agent, the corporation had produced records in November 2007 and made remittance payments) and at hearing, defense counsel, in essence, waived the defect.

Putting aside this ambiguity and construing the April Order as binding both the corporation and Mr. Killette, the testimony indicates that Mrs. Killette (as office manager) did not produce the records, as ordered, because she thought (albeit in error) that she already had done so. The question, therefore, is whether the corporation's reliance on the *earlier* production of records is sufficient to constitute compliance with the Order. The Court finds this to be a very close question, but, applying the clear and convincing standard, cannot recommend a finding of contempt.

Plaintiff's counsel testified and established that the records in question (January through September 2006) were never provided to her. She did not, however, contest Mrs. Killette's testimony that Mrs. Killette had previously gathered documents from the outside payroll company and produced them to Plaintiff. Based on the evidence, it seems to the Court that this is not a case where a Defendant has "flagrantly disobeyed" an Order, as Plaintiff contends; rather, it appears that a small family business (literally a mom-and-pop operation) thought that they had already complied with the Order in sending the records. While subjective intent is not determinative in a civil contempt motion, "conduct that evinces substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance." *Howard Johnson, supra.* While Defendant certainly did not go out of its way to confirm that it had, in fact, sent the right records and its refusal to communicate further with Plaintiff's counsel no doubt made things worse for both parties, considering that Defendant had been compliant with remitting payments since September 2006 and that Mr. and Mrs. Killette did not appear to be particularly sophisticated in the intricacies of law, the failure to comply simply does not meet the clear and convincing contempt bar.

*Remittance Amount*

The second ambiguity is directed to the remittance amount. The April Order provides, at section c., as follows:

> Defendant shall pay to USA Funds an amount equal to 10% of each and every disposable pay paid or payable to Tabitha A. Killette since January 19, 2006, until the date of entry of this order, up to the amount Tabitha A. Killette owes the USA Funds, which the Court finds is $5,868.64 as of February 29, 2008, plus interest at a per diem rate of $0.96 per day thereafter until the date of this Order; plus further collections costs incurred. If the amount awarded pursuant to the preceding paragraph is not sufficient to pay USA Funds in full, Defendant shall remit on account of USA Funds' garnishment 10% of the disposable pay, payable by Defendant to Tabitha A. Killette from the date of this order, until Tabitha A. Killette's obligation to USA Funds is paid in full

(Doc. No. 21).

This paragraph is ambiguous in that it does not set forth a specified dollar amount to be paid (no doubt due to the failure to produce records from which the amount could be ascertained with precision); nor does the Order recognize or credit any payments Defendant admittedly made since September 15, 2006, nor the amount of the three income tax intercepts.[5]  As Defendant had been paying, both before entry of this Order and after, the Killettes could have understandably considered this Order to direct them to simply continue to do what they had already been doing.  To the extent more was implied, Defendant asserts that it had been trying to ascertain the amount due, in light of the credits and income tax intercepts.[6]  As ambiguities are to be construed in Defendant's favor, this conduct, under these circumstances, is not contemptuous.  It is **respectfully recommended** that the Court deny the motion, to the extent it seeks a finding of contempt.

---

[5] The fault here lies with Plaintiff's counsel in that it appears the District Judge used the recommended language in the Motion for Entry of Default Judgment (Doc. No. 16).

[6] Note that the time sheets indicate that Ms. Stinson was in communication with defense counsel regarding these matters.  Doc. No. 33, entries 4/22/2008; 7/15/2008; and all of page 8.

*Appropriate Relief*

In finding that the conduct at issue does not warrant contempt sanctions, the Court nonetheless finds that Plaintiff is clearly entitled to the Court's assistance in bringing this matter to closure. Toward that end, the undersigned **recommends** that the Court enter a judgment, consistent with the admitted liability for the payments which should have been withheld from the date of the first administrative wage order to September 15, 2006, plus interest, attorney's fees and costs, as set forth below.

*Amount Due*

Principal and Interest

As noted above, at hearing, Plaintiff's counsel estimated (based on average remittances Defendant has sent since September 2006) a past due remittance total of $1,272.25. According to the papers, interest is accruing at .96 cents a day, with an estimated $251.00 in interest due, as of the date of the hearing. Although Plaintiff contends that the exact amount can only be ascertained by reference to payroll records which Defendant has yet to provide, as liability is undisputed, and Plaintiff has waited long enough, the Court finds that Defendant has waived any objection to the estimated amount and it should be reduced to judgment and awarded.[7]

Attorney's Fees and Costs

Plaintiff also seeks an award of attorney's fees and an award of court costs. In a demand letter dated December 26, 2007, Plaintiff put its fees at $3,500.00; in Affidavit dated April 3, 2008, Plaintiff's counsel sought at attorney's fee of $5,327.50 (Doc. No. 19); and in Supplemental Affidavit, dated September 3, 2008, "additional legal fees of $7,035.50." (Doc. No. 33). Due to the qualifier "additional," the exact amount of attorney's fees sought is not clear. As for costs, Plaintiff originally

---

[7]Ultimately, Defendant will be entitled to a satisfaction of the judgment once all obligations are paid.

sought $370 (Doc. No. 20), but now seeks an additional $584 (Doc. No. 32), for an apparent total of $954.00.

The Court, in its April Order, granted Plaintiff entitlement to its costs and *reasonable* attorney's fees (Doc. No. 21 [emphasis added]). To the extent Plaintiff is seeking at least $8,000 in costs and fees, the undersigned finds that amount to be unreasonable.

As set forth recently in a similar case brought by Plaintiff:

> [Section] 1095a(a)(6) of the amended Higher Education Act requires courts to award attorney's fees and costs to a guaranty agency forced to bring suit to enforce a garnishment order. The guaranty agency, however, is only entitled to recover those expenses reasonably incurred by its attorneys in connection with work that was both useful and necessary to its claim in this court. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (reasonableness standards "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.' "); *see also Educ. Credit Mgmt. Corp. v. Cherish Prods., Inc*., 312 F.Supp.2d 1183, 1186 (D. Minn. 2004); *Educ. Credit Mgmt. Corp. v. Cherish Prods.*, Inc., 247 F.Supp.2d 1132, 1135 (D. Minn.2003); *Educ. Credit Mgmt. Corp. v. Wilson*, No. 1:05-cv-41, 2006 WL 4608614, at *8-*9 (E.D. Tenn. Oct.3, 2006). Despite USA Funds' argument to the contrary at the damages hearing, the absence of the word "reasonable" in § 1095a(a)(6) does not eliminate this court's discretion to assess the reasonableness of fee and cost claims. Only those attorney's fees and costs which the court deems reasonable, as opposed to all fees requested by counsel, are recoverable. *See Wilson,* 2006 WL 4608614, at *9 (the court is not "a mere 'rubber stamp' without any authority and discretion to review claims for attorney's fees").

*United Student Aid Funds, Inc. v. Prodanis, Inc*., 2008 WL 2180177, 2 (D. N.H. 2008). The Court calculates reasonableness using the familiar lodestar approach. "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.1994) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1571 (11th Cir. 1985).

Factors to be considered when setting a fee include: 1) the time and labor required; 2) the novelty and difficulty of the issues; 3) the skill required to perform the legal services properly; 4) preclusion of other employment; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) *the amount involved and the results obtained;* 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974) [emphasis added]. The going rate in the community is the most critical factor in setting the fee rate. *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir.1990).

In order to determine reasonable hours and rates, the Court reviews the papers submitted by Plaintiff and considers the *Johnson* factors. Applied here, the Court initially notes that Brett Berman, loosely identified as "co-counsel," has made no appearance in this case, and is not referenced as a timekeeper on the billing sheets attached to the supplemental fee affidavit, which purport to include the firm's time from "01-01-1900 thru 9-30-2008" (Doc. No. 33 at 3). Indeed, a cursory check of the public records for members of the Florida Bar yielded no attorney by that name eligible to practice law in this state, and he has submitted no affidavit attesting to any work performed on this matter. Having made no appearance in this case, and absent any proof of any work done (indeed, such work might well be in violation of Florida's ethical rules, absent *pro hac vice* admission), the Court finds that Mr. Berman is not "co-counsel" and declines to make any award for Mr. Berman's "services."

This leaves Ms. Stinson, Mr. Braswell, and the paralegal. According to the time sheets,  Ms. Stinson billed 34.50 hours at $225 per hour (for a total of $7,762.50); Mr. Braswell billed .10 of an hour for a total of $25.00, and paralegal time was $195.00 ( 3 hours total).  The paralegal time and Mr. Braswell's time are certainly reasonable.  Ms. Stinson's time requires some deductions.

-11-

Ms. Stinson conferred with the mysterious Mr. Berman on numerous occasions, according to her billing records. As the Court finds no evidence that these conferences moved the case forward, however, this time is not billable. Moreover, Ms. Stinson spent significant amounts of time on matters such as obtaining certified copies from the Clerk of Court and checking with the United States Marshal regarding service of the Order and Notice of Hearing. These tasks, while necessary, are ministerial in nature, and do not warrant reimbursement at counsel's hourly rates. Finally, absent any information regarding her experience or qualifications, the Court cannot evaluate whether Ms. Stinson's rate is reasonable.

Considering the *Johnson* factors, the Court further notes that the case was not novel or difficult, and required no particular expertise to prosecute. The modest amount involved certainly mandated handling the case with the least time possible[8], and the Court has no information with respect to counsel's experience or ability, other than that based on review of the pleadings and observation of her performance at hearing. Similarly, the Court has no information regarding counsel's relationship with the client (although the Court suspects that Mr. Berman is, in essence, "the client"), so this factor is neutral. The case does not appear to be undesirable, as liability is a sure thing under the statute; nor does the case seem to be one that would preclude other employment. Finally, the Court looks to similar awards in other cases. In *Educational Credit Management Corp. v. Cherish Products, Inc,* 312 F. Supp. 2d 1183 (D. Minn. 2004), cited by Plaintiff, the Court reduced the requested attorney's fee by over $2,000, and awarded $15,000.00. In *Prodanis, supra,* Plaintiff received an attorney's fee award of $6,158.00, a reduction of over $2,600 from the request. 2008 WL 2180177. Significantly, in that decision, which was decided in May of this year, the *Prodanis* court

---

[8] No reasonable client, paying its own legal bills, would routinely and willingly incur fees that are multiples of the amount it might collect upon success in litigation.

found the rate of $185 per hour to be a reasonable rate for Plaintiff's prosecution of an identical cause of action. As the *Prodanis* decision involved the same Plaintiff and the same cause of action, the Court finds that rate to be appropriate here, absent any showing warranting the $225.00 sought.

The Court also notes that the amount of fees incurred here was entirely out of proportion to the actual amount of damages, and compels a significant reduction. In accessing reasonableness, courts generally evaluate whether the amount at stake warranted the effort expended. *See, e.g., Minks v. Polaris Industries, Inc.,* 2007 WL 1725211 (M.D. Fla. 2007) (slip opinion) (in a different context, reducing the fees claimed by 50% and holding: "[T]he Court finds that a substantial portion of the attorney's fees expended in this case were unreasonably incurred, particularly when compared to the size of the damages award that was actually supported by the record."); *Dowdell v. City of Apopka,* 698 F.2d 1181, 1192 (11th Cir. 1983)(noting that civil rights attorney's fee statute "may not be subverted into a ruse for producing 'windfalls' for attorneys"); *Gisbrecht v. Barnhart,* 535 U.S. 789 (2002) (reviewing contingency fee agreements in social security case to disallow windfalls for lawyers). Based on all of the circumstances outlined above, the Court finds a reasonable fee for Ms. Stinson to be $3,700.00 (20 hours at $185 per hour), and recommends an award of same.

As for costs, Plaintiff initially claimed $370 in costs (Doc. No. 20), consisting of the filing fee and a $20 charge for service of process. These expenses are recoverable. In Supplemental Affidavit, however, Plaintiff seeks an additional $584.00, consisting of $450 for the services of the United States Marshal to serve the notice of hearing, and $134 for certified copies of the Order and Notice of Hearing. The Court finds these expenses to be patently unreasonable. As noted above, while the Court directed Plaintiff to personally serve a copy of the Court's Order and Notice of Hearing, nothing in that direction authorized or required the services of the United States Marshal nor to obtain certified

copies. Considering the damage amount allegedly at issue here, these costs cannot be justified as necessary or reasonable, and should therefore be disallowed.

*Punitive Damages*

Having concluded that there is an insufficient basis to hold Defendant in civil contempt, the Court also finds that Defendant's conduct, while not admirable in any respect, does not qualify as reprehensible. Punitive damages are inappropriate here, especially as the amount Plaintiff will receive in judgment (including costs, attorney's fees, and interest) far exceeds the actual amount due on the underlying student loan.

A final note is in Order. In recommending that Defendant and its principal not be found to be in civil contempt, the Court is *not* suggesting that Defendant acted appropriately. Although the Court cannot find contempt under the clear and convincing standard, this is not to say that such a finding could not be made, were the matter reviewed under the more lenient preponderance of the evidence standard. While the Court accepts that the Killettes did not fully understand the April Order, it also believes that they had no desire to. Their refusal to timely acknowledge their obligations and to fully investigate and respond to the matter caused significant expense, not only for Plaintiff, but, as evidenced in the judgment recommended herein, ultimately for Defendant and themselves.

### *RECOMMENDATION*

The Court respectfully recommends that the motion be **denied,** to the extent it seeks a finding of contempt, but **granted, in part,** to the extent it seeks other relief. For the reasons set forth above, it is **respectfully recommended** that the Court enter judgment in Plaintiff's favor, as follows:

| Principal | | $1,272.25. |
|---|---|---|
| Interest | | $251.00 |
| Attorneys Fees | Ms. Stinson | $3,700.00 |

|  | Mr. Braswell | $25.00 |
|---|---|---|
|  | paralegal | $195.00 |
| Costs |  | $370.00 |
| **TOTAL** |  | **$5,813.25** |

The request for punitive damages should be denied. Should the Court approve and adopt this recommendation, following entry of judgment, the Clerk should be directed to close this case.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on September 22, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy