UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STUDENT AID FUNDS, INC.,

Plaintiff,

-vs-                                                              Case No.  6:07-cv-1140-Orl-19DAB

GARY'S GRADING & LANDSCAPING,

Defendant.

_____

# ORDER

This case comes before the Court on the following:

1.      Motion of Plaintiff for Order Holding Defendant, Gary's Grading & Landscaping, and Its

President, Gary B. Killette, In Civil Contempt, and Awarding Punitive Damages Against

Defendant Pursuant to 20 U.S.C. § 1095a(a)(6) (Doc. No. 24, filed July 30, 2008);

2.      Response of Defendant to Motion for Order Holding Defendant in Contempt (Doc. No. 28,

filed Aug. 21, 2008);

3.      Report and Recommendation of the United States Magistrate Judge (Doc. No. 36, filed Sept.

22, 2008); and

4.      Objection of Plaintiff to the Report and Recommendation of the Magistrate Judge (Doc. No.

37, filed Oct. 1, 2008).

## Background

This case concerns the failure of a small business to comply with an administrative wage

garnishment order regarding an employee who had defaulted on a federally guaranteed loan.  The

particular issue before the Court is whether the business and its principal should be held in civil

contempt for failing to comply with this Court's Order requiring that the business produce payroll records and remit payment for approximately eight months' worth of wages that it failed to garnish.

Plaintiff United Student Aid Funds, Inc. is a guaranty agency authorized by the United States Department of Education to directly guarantee payment of federal student loans. (Doc. No. 1 ¶¶ 5-6, 9, filed July 7, 2007.) Plaintiff is also authorized by statute to order employers to garnish the wages of employees who have defaulted on loans which Plaintiff guaranteed. 20 U.S.C. § 1095a(a). If an employer fails to comply, Plaintiff may bring an action under 20 U.S.C. § 1095a(a)(6) to seek the amount which should have been garnished.

Defendant "Gary's Grading and Landscaping" is a fictitious name for a small local landscaping business that no longer operates under that name.[1] (Doc. No. 36 at 2.) However, the owner of that fictitious name, Gary Killette, and his wife, Leslie Killette, later incorporated as "Gary's Grading, Inc.," and all parties have treated that corporation as the proper respondent even though it is not formally named as a party.[2] (*Id.*) The employee at issue is Tabitha Killette, the daughter of Gary and Leslie Killette. (*Id.*)

Plaintiff issued an administrative wage withholding order to Defendant on January 19, 2006, after Tabitha Killette defaulted on her student loan. (*Id.*) Defendant failed to comply with both this order and a second order, and Plaintiff's attorney eventually sent a demand letter to Defendant in August of 2006. (*Id.* at 3.) Soon after receiving the letter in September of 2006, Defendant began

---

[1]     In fact, the Florida Department of State, Division of Corporations, lists "Gary's Grading & Landscaping" as a fictitious name that expired in 2003. (Doc. No. 24-3 at 3.)

[2]     Consistent with the Report and Recommendation, the Court will refer to this entity as "Defendant" for purposes of this Order. (*See* Doc. No. 36.) However, the Court notes that "Gary's Grading, Inc." has not been made a party to this litigation, and it will address an issue which arises with this omission in Part III of the Order.

withholding and remitting the appropriate amounts from Tabitha Killette's paycheck. (*Id.*) However, Defendant did not remit the wages that should have been withheld and remitted from the date of the first administrative order, $1,272.25 by Plaintiff's estimate, plus interest, fees, and costs. (*Id.* at 4.)

Defendant's failure to fully comply with the demand letter prompted Plaintiff to file this lawsuit on July 9, 2007. (Doc. No. 1.) Counsel for Defendant appeared but failed to file a timely answer, and the Clerk of the Court entered a default. (Doc. Nos. 7, 9-10, 12.) Plaintiff then moved for a default judgment. (Doc. Nos. 16, 17.) This Court granted its request in part. (Doc. No. 21, filed Apr. Apr. 17, 2008.) Adopting some, but not all, of the proposed language in Plaintiff's Motion for Default Judgment, the Court ordered Defendant to produce copies of its payroll records from January 19, 2006 and pay Plaintiff the appropriate remittance as indicated from the records, until the debt Tabitha Killette owed to Plaintiff was paid in full. (*Id.*) The Court also instructed that Plaintiff may "recover its costs and reasonable attorney's fees incurred in bringing this action and such other relief as the Court determines to be just, including punitive damages, and [Plaintiff] may move for an award of those amounts at such time as the full extent of Defendant's liability and the amount of [Plaintiff's] expenditures to enforce same become known." (*Id.*) However, the Court did not enter final judgment against Defendant for the outstanding portion of Tabitha Killette's wages that should have been garnished during the eight month period. (*See id.*) Instead, the Court instructed Plaintiff to file a status report in 90 days that indicates whether Defendant satisfied the Court's Order.

On July 15, 2008, Plaintiff filed the status report and indicated that it had not received the payroll records or any remittance since the Court entered its Order on April 17, 2008. (Doc. No. 22.)

Plaintiff then filed a Motion which sought contempt sanctions against Defendant and its principal,

Gary Killette, and an award compensatory and punitive damages. (Doc. No. 24.) Specifically,

Plaintiff contended that the Court should:

- Award punitive damages, pursuant to 20 U.S.C. § 1095a(a)(6), in the amount of $10,000, plus further collection of costs and interest;

- Hold Defendant liable for both the costs and attorney's fees incurred in bringing the action;

- Hold Defendant liable for compensatory damages in the amount of $3,831.87, plus costs and interest; and

- Order Gary Killette to be taken into custody in the event that Defendant fails to comply with this Court's Order of April 17, 2008, in all respects.

(*Id.* at 2.) Plaintiff also filed affidavits claiming fees of approximately $12,000 and costs of

approximately $954.[3] (Doc. Nos. 18-20, 32, 33.)

The Magistrate Judge noticed a hearing on the Motion. (Doc. No. 25.) During that hearing,

the Court took testimony from Plaintiff's counsel, Karen Stinson, and Leslie Killette. (Doc. No. 34.)

Several weeks later, the Magistrate issued a Report and Recommendation addressing Plaintiff's

Motion and the appropriateness of an award of attorney's fees and costs. (Doc. No. 36.)

The Magistrate concluded that contempt sanctions and punitive damages were inappropriate

but recommended that the Court enter final judgment against Defendant for the outstanding principal

---

[3]     The Magistrate noted that it was not clear exactly how much in fees Plaintiff was
requesting. Plaintiff first filed an affidavit in support of fees when it moved for a default judgment
and again requested "additional fees" in connection with the Motion seeking contempt sanctions.
 (Doc. No. 36 at 9-10.) The time sheets filed with the second affidavit include entries for work
performed before Plaintiff moved for the default judgment. (Doc. No. 33 at 3-9.)

and interest, attorney's fees in the amount of $3,920, and costs in the amount of $370.00, for a total of $5,813.25. (Doc. No. 36.) Specifically, the Magistrate found that Defendant, through Gary and Leslie Killette's actions, made a good faith attempt to comply with the order to hand over payroll records. (Doc. No. 36 at 7.) It appeared from the testimony at the hearing that Leslie Killette believed that an earlier batch of documents she had sent to Plaintiff contained the requested information, though this misperception was furthered in part by her refusal to communicate with Plaintiff's counsel. (*Id.*) Regarding the remittance amount, the Magistrate found that the April 17, 2008 Order was ambiguous because it did not set forth the specified dollar amount to be paid, and it did not credit payments that Defendant had made since September 15, 2006 or the amount of three income tax intercepts. (*Id.* at 8.) As worded, the Order could reasonably be read to require the Killettes to simply continue making the payments that they were already making.[4] (*Id.*) In addition, because Defendant's behavior was not contumacious, the Magistrate concluded that punitive damages were similarly inappropriate. (*Id.* at 9.)

---

[4]    The exact language regarding remittance in the April 17, 2008 Order is as follows:

> Defendant shall pay to USA Funds an amount equal to 10% of each and every disposable pay paid or payable to Tabitha A. Killette since January 19, 2006, until the date of entry of this order, up to the amount Tabitha A. Killette owes the USA Funds, which the Court finds is $5,868.64 as of February 29, 2008, plus interest at a per diem rate of $0.96 per day thereafter until the date of this Order; plus further collections costs incurred. If the amount awarded pursuant to the preceding paragraph is not sufficient to pay USA Funds in full, Defendant shall remit on account of USA Funds' garnishment 10% of the disposable pay, payable by Defendant to Tabitha A. Killette from the date of this order, until Tabitha A. Killette's obligation to USA Funds is paid in full.

(Doc. No. 21 at 1-2.)

However, even though contempt sanctions were not warranted, the Magistrate recommended that the Court award Plaintiff the estimated unpaid remittance and interest. (Doc. No. 36 at 9.) The Magistrate adopted Plaintiff's estimation that Defendant owed $1,272.25 in garnished wages and found that Defendant, at this point, had waived any objection to the estimated amount. (*Id.*) Using the lodestar approach, the Magistrate determined that the appropriate amount of attorney's fees to be awarded in this case was $3,920. (*Id.* at 14-15.) The Magistrate questioned the reasonableness of the $225 hourly rate claimed by the attorney of record, Kirstin Stintson, because the case was not novel and a relatively small amount of money was at stake. (*Id.* at 13.) Drawing on case law explaining that statutory attorney's fees provisions are not designed to be windfalls, the Magistrate concluded that a $185.00 per hour rate was more appropriate for the prosecution of this action. (*Id.*) The Magistrate also noted that some of the claimed amount was for work performed by an attorney named Brett Berman who was loosely identified as co-counsel but had made no appearance in this case and was not listed as a member of the Florida Bar. (*Id.* at 11.) Because there was no explanation of how Mr. Berman contributed to this case, the Magistrate declined to award fees for his service or for time Ms. Stintson spent consulting with him. (*Id.* at 12-13.) Finally, the Magistrate approved Plaintiff's claimed costs with the exception of $450 that Plaintiff spent to have the United States Marshal serve the Notice of Hearing on Defendant. (*Id.* at 13.) Given the relatively small amount in controversy, the Magistrate found that spending $450 for service of a notice was both extravagant and unnecessary. (*Id.* at 2 n.3, 13-14.)

Plaintiff filed an Objection to the Report and Recommendation, raising several points of error. (Doc. No. 37.) Plaintiff first contends that it proved the existence of contempt through clear and convincing evidence. (*Id.* at 1-2.) According to Plaintiff, Defendant was required to prove that

it was "factually impossible" to comply with the Court's Order. (*Id.* at 2.) Defendant presented no

such evidence and waived its right to do so by defaulting. (*Id.*) Furthermore, Plaintiff argues that

the "Order was clear that the documents needed to start from January of 2006 and the Defendant can

at least be charged with knowing what documents it sent to the Plaintiff." (*Id.*) Plaintiff also states:

> As to the remittance amount which was required under section "c." of the Court's
> April 16th [sic] Order, an exact remittance cannot be determined until the documents
> are provided to the Plaintiff. The fact that section "c" has not been complied with
> is absolutely no one's fault except the Defendant's. If it had merely provided the
> payroll documents, the correct calculations could be made and there would be no
> further ambiguities.

(*Id.*)

Plaintiff also objects to the Magisrate's conclusion regarding attorney's fees. According to

Plaintiff, the only evidence regarding attorney's fees presented to the Magistrate was in the form of

affidavits presented by Plaintiff. (*Id.* at 3.) Further, Plaintiff argues, the Magistrate ignored a

district court case, *Education Credit Management Corp. v. Cherish Products Inc.*, 312 F. Supp. 2d

1183 (D. Minn. 2004), in which the court awarded $15,000 in attorney's fees where $3,000 was at

stake. (*Id.* at 3-4.) Plaintiff also objects to the Magistrate's conclusion regarding the extravagance

of employing the Marshal to serve the Notice of Hearing on Defendant, stating that "Rule 4 [of the

Federal Rules of Civil Procedure] required personal service by the U.S. Marshall [sic]." (*Id.* at 4.)

Finally, Plaintiff contends that Brett Berman is an attorney licensed in the State of Pennsylvania and

serves as "national counsel" for United Student Aid Funds. (*Id.*) Plaintiff explains that Mr. Berman

advised local counsel in this case and used his expertise to keep fees to a minimum. (*Id.* at 5.) Thus,

Plaintiff argues that it should receive an award of fees for his service. (*Id.*)

Defendant did not file an objection to the Report and Recommendation or a response to

Plaintiff's Objection.

**Standard of Review**

A party seeking to challenge the findings in a report and recommendation must file "written objections which specifically identify the portions of the proposed findings and recommendation[s] to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)). If a party makes a proper specific objection, the district court must conduct a *de novo* review of the portions of the report to which objection is made. *Id.* at 783-84. The remainder of the report is reviewed for clear error. *Id.* at 784. The district court may "accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* at 784.

**Analysis**

**I.     Specific Objections**

**A.     Contempt**

Plaintiff contends that the Magistrate erred by concluding that Defendant should not be held in civil contempt. As explained above, Plaintiff advocates three specific errors in the Magistrate's reasoning: (1) that the Magistrate failed to require Defendant to prove that compliance with the Order was "factually impossible"; (2) that the requirement to produce payroll records was unambiguous; and (3) that Defendant's failure to comply with the remittance requirement was its own fault because it never identified the proper amount owed. None of these arguments is persuasive.

Plaintiff's first argument misstates the law. The Magistrate correctly summarized the standard for establishing civil contempt. (*See* Doc. No. 36 at 4-5 (citing *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990)). The Eleventh Circuit explained in *Howard*

*Johnson* that the alleged contemnor may escape sanctions by showing a "present inability to comply

that goes 'beyond a mere assertion of inability . . . .'" *Howard Johnson*, 892 F.2d at 1516 (omission

in original). The court also explained that conduct "that evinces substantial, but not complete,

compliance with the court order may be excused if it was made as part of a good faith effort at

compliance." *Id.* Thus, under the Eleventh Circuit's case law, the alleged contemnor may avoid a

contempt finding by showing an inability to comply *or* a good faith effort to comply. *Id.* The

Magistrate's analysis centered on whether the Killetes made a good faith effort to comply with the

Court's Order. (Doc. No. 36 at 7 (citing *Howard Johnson*, 892 F.2d at 1516).) Plaintiff's objection

ignores this second avenue for avoiding the imposition of sanctions.

Plaintiff's second and third arguments ignore the Magistrate's actual reasoning and instead

attack straw men. The Magistrate did not conclude that Defendant's failure to produce the payroll

records was justified by the Order's ambiguity; rather, the Magistrate concluded that Leslie Killette

made a good faith effort to comply with the Order based on her belief that she had already produced

the records in question. Plaintiff does not address this conclusion. Likewise, Plaintiff misses the

mark by arguing that Defendant's failure to make the proper remittance was the result of its failure

to produce the requested payroll records. The Magistrate concluded that the Order was ambiguous

on the issue of remittance because it could be interpreted as requiring Defendant to continue making

the same wage garnishment payments it had already been making since September of 2006. Nothing

in the Order identifies the eight-month period during which Defendant failed to garnish Tabitha

Killette's wages or clearly requires Defendant to make a one-time lump-sum payment for that

period. Further, the Order failed to acknowledge that Defendant had made payments from

September of 2006 to April 17, 2008, nineteen of the twenty seven months encompassed by the

phrase "since January 19, 2006, until the date of entry of this order." Because Defendant was already making payments to Plaintiff at the time the Court issued this Order, it was not unreasonable for Gary and Leslie Killette to think that they were already complying with the Order. The same ambiguity would exist irrespective of whether Defendant properly produced the payroll documents from January to September of 2006.

Accordingly, Plaintiff's specific objections regarding appropriateness of contempt sanctions are overruled.

**B.** **Attorney's Fees**

Plaintiff argues that the Magistrate committed two errors in determining the appropriate amount of attorney's fees. Plaintiff, citing to a larger award of fees in a similar case, first appears to contend that the fees should not have been reduced based on the small amount in controversy and the simplicity of prosecuting this case. Second, Plaintiff argues that fees should have been awarded for Mr. Berman's work on the case.

Again, the Court is not persuaded by either of these arguments. The Magistrate correctly summarized the twelve lodestar factors cited by the former Fifth Circuit Court of Appeals in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), and concluded that the eighth *Johnson* factor, "the amount involved and the results obtained," particularly militated against an award of the fees claimed by Plaintiff. (Doc. No. 36 at 10-13.) The Magistrate noted that even in *Education Credit Management Corp.*, 312 F. Supp. 2d at 1186-88, the case that Plaintiff relies on, the award of attorney's fees was reduced by $2,000 to $15,000. (Doc. No. 36 at 12.) Further, the Magistrate observed that Plaintiff had received a fee award of $6,158 in a similar case, *United Student Aid Funds, Inc. v. Prodanis, Inc.*, Civil No. 07-214-JL, 2008 WL 2180177, at *2

(D.N.H. May 23, 2008), after a reduction of about $2,600 from the initial request. (Doc. No. 36 at

12.) Ultimately, the *Prodanis, Inc.* court calculated the appropriate hourly rate to prosecute such

an action to be $185 per hour. (*Id.*) Finally, the Magistrate noted that the attorney's fees claimed

in this case far exceeded the amount in controversy and that the recovery of garnished wages due

to a student loan default should not act as a windfall for the guaranty agency's attorneys. (*Id.* at 13.)

The Court agrees with the Magistrate Judge's reasoning. Plaintiff stresses that the "only

evidence which was before the Court [during the hearing] were [sic] the affidavits filed by the

Plaintiff." (Doc. No. 37 at 3.) But the Court is not bound to accept a plaintiff's estimation of

attorney's fees; in fact, the Court has a duty to independently assess the appropriateness of the

claimed fees. *See, e.g.*, *Godoy v. New River Pizza, Inc.*, 565 F. Supp. 2d 1345, 1347 (S.D. Fla. 2008)

(noting that the adversarial process normally aids the Court in determining whether the amount of

attorney's fees requested is "reasonable," but the court has an independent to duty to assess

reasonableness regardless of whether a fee request is opposed). An award of approximately $12,000

in attorney's fees, nearly ten times the amount claimed, is simply excessive for the task with which

Plaintiff's attorneys were charged. As the Magistrate Judge noted, no reasonable client paying its

own legal bills would allow its attorneys to incur fees that are multiples of the amount it might

collect upon success in the litigation. Nor is there any reason to believe that Congress, in providing

a fee shifting provision for actions prosecuted under 20 U.S.C. § 1095a, intended to create a windfall

for attorneys pursuing actions under the section. Further, Plaintiff's reliance on *Education Credit

Management Corp.* is undercut by the fact that the case features no lodestar analysis or any

discussion of proportionality between the amount in controversy and the amount spent prosecuting

an action to recover it. *Educ. Credit Mmgt. Corp.*, 312 F. Supp. 2d at 1186.[5]  In addition, Plaintiff

does not bother to cite to the lodestar factors or attempt to engage in any legal analysis of this issue.

Plaintiff's arguments concerning Mr. Berman come too late and in the wrong form.  As a

practical matter, Plaintiff should have presented this new information before the Magistrate issued

the Report and Recommendation.  *E.g.*, *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998)

(district courts may decline to hear arguments raised for the first time in an objection to a report and

recommendation).[6]  In any event, Plaintiff's representations concerning Mr. Berman are made in its

Objection to the Report and Recommendation rather than in an affidavit or other type of evidence.

Because the arguments of an attorney do not constitute evidence, *e.g., United States v. Smith*, 918

F.2d 1551, 1562 (11th Cir. 1990), this Court lacks an evidentiary basis to award attorney's fees for

Mr. Berman's services.

Accordingly, Plaintiff's specific objections regarding the amount of attorney's fees to be

awarded are overruled.

**C.     Costs**

Plaintiff's final specific objection concerns the Magistrate's conclusion that Plaintiff should

not be reimbursed for $450 in costs spent on employing the Marshal to personally serve Defendant

---

[5]     To the extent the case stands for the proposition that attorney's fees need not be in reasonable proportion to the overall amount of garnished wages sought to be recovered, this Court disagrees. *Prodanis*, 2008 WL 2180177, at *2.  Further, the case is not binding on this Court.

[6]     The Eleventh Circuit has determined that district courts may consider issues raised for the first time in an objection to a report and recommendation. *Stephens v. Tolbert*, 471 F.3d 1173, 1176-77 (11th Cir. 2006).  While several circuits have also found that the district courts have discretion to deem such arguments to be waived, the Eleventh Circuit expressly left this question open in *Stephens*. *Id.* ("We need not decide whether the district court could have declined to consider an argument that had not been presented to the magistrate judge."); *Hynes*, 143 F.3d at 656 (summarizing Second, Third, and Seventh Circuit cases and finding that district courts have discretion to decline hearing arguments that were not raised before the magistrate judge).

with the Notice of Hearing.  Plaintiff is permitted to recover the costs associated with prosecuting this case under 20 U.S.C. § 1095a(a)(6).  However, courts have discretion under this statute to deny taxation of unreasonable or unnecessary costs.  *Prodanis*, 2008 WL 2180177, at *2.

The Order setting a hearing on this matter required Plaintiff to "personally serve (within the meaning of Rule 4, Federal Rules of Civil Procedure) Defendant and Gary B. Killete with a copy of the motion seeking entry of an order of contempt." (Doc. No. 25.)  According to Plaintiff, Federal Rule of Civil Procedure 4 requires personal service to be effected by a United States Marshal; thus, the $450 spent on service was justified.  (Doc. No. 37 at 4.)  Plaintiff does not specify exactly what language in Rule 4 *requires* a United States Marshal to effect service, nor can the Court find such language.  In fact, the Rule states nearly the opposite.  Subsection (c)(2) provides that "*Any person who is at least 18 years old and not a party may serve a summons and complaint.*"  Fed. R. Civ. P. 4(c)(2) (emphasis added).[7]  Regarding the services of the Marshal, subsection (c)(3) provides that "*At the plaintiff's request*, the court *may order* that service be made by a United States marshal or deputy marshal or by a person specifically appointed by the court."  Fed. R. Civ. P. 4(c)(3) (emphasis added).  Certainly, neither provision can be read as requiring service by a Marshal when not specifically ordered by the Court.

The Magistrate correctly concluded that service by the Marshal was both unnecessary and extravagant in this case.[8]  *Prodanis*, 2008 WL 2180177, at *2 ("Only those attorney's fees and costs

---

[7]     Notably, Plaintiff served the Complaint and Summons on Defendant through the Osceola County Sheriff's office at a cost of $20.  (Doc. Nos. 4, 20.)

[8]     This conclusion should not be taken to mean that a litigant should never be entitled to recoup the costs of service by a Marshal.  In fact, 28 U.S.C. § 1920, the statute governing the recovery of costs in most cases, provides that a court may tax this cost against the opposing party.  However, as discussed by the Magistrate, the use of the Marshal's service in this case was both

(continued...)

which the court deems reasonable, as opposed to all fees requested by counsel, are recoverable

[under 20 U.S.C. §1095a(a)(6)]."); *see also Ridings v. Riverside Med. Center*, No. 05-2134, 2007

WL 924020, at *1 (C.D. Ill. Mar. 26, 2008) (denying taxation of unnecessary costs associated with

service). Accordingly, the Court finds no error in the Magistrate's reasoning regarding the cost of

service, and therefore Plaintiff's specific objection on this matter is overruled.

## II.       General Objections

Plaintiff requests that the Court grant the relief requested in its Motion seeking contempt

sanctions and an award of punitive damages. (Doc. No. 37 at 6.) The Court interprets this request

as a general objection to the Magistrate's determination that Plaintiff should receive a smaller

judgment and award of attorney's fees and costs than it requested in the Motion. After reviewing

the record and the arguments before the Magistrate, the Court finds no clear error in the Magistrate's

recommendations. *See Macort*, 208 F. App'x at 784 (portions of a report and recommendation to

which no specific objection is made are reviewed for clear error on the face of the record).

## III.      Entering Judgment Against a Fictitious Name

Although the Court agrees with the recommendations of the Magistrate Judge, there remains

an additional issue. "Gary's Grading, Inc.," the entity which the parties recognize as the proper

respondent, is not named as a party in this action. Nor are the principals of the corporation, Gary

and Leslie Killette.[9] Rather, the summons issued in this case was addressed to "Gary's Grading &

---

[8](...continued)
extravagant and unreasonable in light of the small amount of money in controversy. Further,
Plaintiff's objections to the Report and Recommendation are based on a frivolous reading of Rule
4 that directly contradicts the plain language of the Rule.

[9]       Gary Killette was served with notice of the contempt hearing. (Doc. No. 30, filed
Nov. 3, 2008.) However, such notice is insufficient to subject him to the jurisdiction of this court
(continued...)

Landscaping," a fictitious name owned by a principal of the corporation against which Plaintiff appears to actually seek relief.. Likewise, the Complaint names "Gary's Grading & Landscaping" as the sole Defendant. (Doc. No. 1.) Accordingly, the Court does not appear to have in personam jurisdiction over "Gary's Grading, Inc," Gary Killette, or Leslie Killette, because they were not properly served or named in the Complaint.[10] *See* Fed. R. Civ. P. 4(k) (service of a summons is a prerequisite for the Court to assert personal jurisdiction over a defendant).

The Court is reluctant to enter judgment against a fictitious name, especially one that expired over five years ago. The Court is also reluctant to engage in an useless act, especially one that may cause future litigation over the binding nature of a such a judgment. Accordingly, Plaintiff shall within **ten (10) days** from the date of this Order file a memorandum of law which addresses the following issue: whether a judgment against "Gary's Grading & Landscaping" would bind any actual entity, and if so Plaintiff should clearly identify such party. Defendant will be permitted **ten (10) days** after Plaintiff files its memorandum of law to file a responsive memorandum.

---

[9](...continued)
for purposes of entering judgment on the underlying claim. *See* Fed. R. Civ. P. 4(k).

[10] It appears that a judgment against "Gary's Grading and Landscaping" may not allow Plaintiff to collect against "Gary's Grading, Inc." *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969) ("It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process."); *Hart v. Yamaha-Parts Distrib., Inc.*, 787 F.2d 1468, 1472 (11th Cir. 1986) (holding that the plaintiff's failure to substitute a defendant's true name for its fictitious name rendered the judgment without *res judicata* effect under Alabama law). *But see* Restatement (Second) of Judgments § 34, cmt. d (1982) ("With respect to corporations and other such legal entities, and to persons sued through a group or official identification such as a partnership or a government official, the action is binding if the designation substantially conforms to the correct one and if notice of the proceeding is given to a person whose being apprised of the action is effective as notice to the entity, group, or official.").

**Conclusion**

Based on the foregoing, Plaintiff shall within **ten (10) days** from the date of this Order file a memorandum of law which addresses the following issue: whether a judgment against "Gary's Grading & Landscaping" would bind any actual entity, and if so Plaintiff should clearly identify such party. Defendant will be permitted **ten (10) days** after Plaintiff files its memorandum of law to respond. The Court defers ruling on the Magistrate Judge's Report and Recommendation (Doc. No. 36) until further notice.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January 21, 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record